IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARON DOWNS, )
)
       Plaintiff, )
)
v. )
) Case No. 13-4023-JAR
JOSTENS, INC., )
)
       Defendant. )
_____)

## MEMORANDUM AND ORDER

Plaintiff Daron Downs brings this action against his former employer, Defendant Jostens, Inc., alleging a claim of retaliation under Title VII of the Civil Rights Act. This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 24). The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, Defendant's motion is denied.

**I.    Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under

---

[1] Fed. R. Civ. P. 56(a).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon her pleadings to satisfy her burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be

---

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[12] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## II.  Uncontroverted Facts

The following facts are uncontroverted or stipulated to by the parties, and all reasonable inferences are drawn in favor of Plaintiff as the non-movant. Defendant Jostens, Inc. owns and operates a Topeka, Kansas production facility, where it printed and bound yearbooks and related products until September 2012. Plaintiff was employed there from 2002 to 2012. Defendant's business is seasonal in nature based primarily on the school year. During non-peak periods, Defendant regularly placed "non-essential" employees on temporary layoff.

---

[11]*Adams*, 233 F.3d at 1246.

[12]Fed. R. Civ. P. 56(c)(4).

[13]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[15]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

The manufacturing employees at the Topeka facility were represented by Graphic Communications Local No. 49-C ("the union") for purposes of collective bargaining. In May 2012, Defendant announced the closure of the Topeka manufacturing operations due to declining business, and consolidated them into Defendant's Clarksville, Tennessee facility subject to bargaining with the union. A significant portion of the manufacturing employees were let go by the end of July 2012, with the remainder terminated over the next several months. The union and Defendant negotiated and entered into a Closing Agreement covering terms and conditions of the closure in July 2012.

Section 6.2 of the collective bargaining agreement ("CBA") provided that Jostens must use seniority when recalling an employee from layoff:

> Each of the above departments [press, bindery, plate, etc.] shall be treated as a single unit for seniority purposes. Seniority shall be observed by department within the bargaining unit. In case of layoff for lack of work the last employee in the department on the seniority list shall be the first laid off providing the senior employees are then capable of doing the available work on a production basis in the affected department.
> When employees are recalled to work, the reverse order shall prevail.[16]

Ronald Lee Struble, a Senior Resources Manager for Jostens, understood that this provision does not require Defendant to use department seniority when transferring a laid off employee to work on a temporary basis in a different department. Michael Schmidt, who in 2012 worked as a Litho Area Manager, also understood that the CBA did not require Defendant to base a recall for a transfer to a new department on an employee's seniority within their original department.

---

[16]Doc. 25, Ex. C § 6.2.

According to Struble, because the recall to the original department is "purely an administrative function," in the case of an "employee convenience" transfer to another department, the seniority provision in section 6.2 of the CBA does not apply.[17] He testified that the provision would apply, however, to a permanent transfer.

On November 9, 2010, Plaintiff and four other employees filed a lawsuit against Defendant in the United States District Court for the District of Kansas,[18] alleging discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Plaintiff also brought a separate claim against Defendant for discrimination on the basis of religion in violation of Title VII. On September 7, 2011, all of the claims under the ADEA settled; on December 8, 2011, Plaintiff and Defendant settled the Title VII claim as well. As a result of these settlements, all the claims against Defendant in Case No. 10-4137 were dismissed on December 27, 2011.

Plaintiff was not recalled during the early months of 2012, although other employees were. Pursuant to the CBA, Defendant maintained a seniority list for the press department. Employees in the press department were all supervised by Mike Main, and they were typically recalled from layoff back to work in December or January for the spring season of production.

In early 2012, Defendant recalled four employees from the press department who had less seniority than Plaintiff in that department: Craig Miller, John Wilson, Michael Radford, and Brandon Allen. On January 22, 2012, Miller and Wilson were recalled and transferred to the plate department as employee convenience transfers. Miller had prior experience in the plate department. He worked there until May 27, 2012, when he was laid off; he was severed as part

---

[17]Doc. 33, Ex. A; Doc. 25, Ex. A at 44–45.

[18]*Sanders v. Jostens, Inc.*, Case No. 10-4137-MLB.

of the plant closing on August 17, 2012.

On March 12, 2012, Radford and Allen were recalled and permanently transferred to the bindery department where they worked as boxers. This position is among the least skilled at the plant. Radford worked for the department for over 35 years and had a positive employment work history. Radford worked in the bindery department until July 13, 2012, when he was severed as part of the Topeka plant closing.

Struble testified about the difference between temporary and permanent transfers between departments for seasonal workers in relation to Radford's transfer:

> Q. [H]ow long typically does the spring season in the press department last?
> A. First week in June we close out for the most part.
> . . . .
> Q. Then, the next one dated March 12th of 2012, what does that indicate to you?
> A. Permanent transfer to bindery March 12th. Change to seasonal.
> Q. What does that mean to you? In other words, are there seasonal boxer positions or is the boxer position typically seasonal or what's that mean?
> A. Oh, it's very seasonal usually. Three months, perhaps.
> Q. Did I understand your earlier testimony correctly that if it's a permanent transfer then the job has to be advertised or posted?
> A. Yes. You understood that correctly.
> Q. And, when there's a permanent transfer in a posting of a position in another department, is seniority—does that affect who is selected for that permanent position?
> A. Yes.
> Q. So, assuming Mr. Downs had more seniority in the press department than Mr. Radford did on March 12th, 2012, could you—would—should he have been hired in the

> position of a boxer instead of Mr. Radford if he applied for
> the position?
>
> A.   I don't know. The change to seasonal is significant.[19]

Struble proceeded to testify that it was strange that an employee would choose to accept this permanent transfer because he would be giving up all press department seniority in order to transfer to a seasonal department and most likely be laid off in three months.[20]

Plaintiff had experience in the plate and bindery departments and believes that these transfers were contrary to normal company procedure because transfers from the press department were only permitted after April in order to extend the season of the press employees. Plaintiff brought the transfers to the attention of his union. On July 31, 2012, the union filed a grievance on behalf of Plaintiff and another press department employee, contending that Defendant disregarded seniority in failing to recall them to work. In response, Defendant denied this allegation, stating that the press department was not finished recalling employees for the 2012 season, and that the employees recalled earlier than Plaintiff were recalled in compliance with the company's practices, since these recalls were done as "employee convenience" transfers. The union had the right to pursue arbitration after the grievance was denied but it declined.

**III.   Discussion**

Title VII makes it unlawful to retaliate against an employee because the employee has opposed any practice made unlawful by Title VII, or because the employee has "participated . . .

---

[19] Doc. 30-3 at 102:24–104:12.

[20] *Id.* at 104:13–105:4.

in an investigation, proceeding or hearing."[21] In the absence of direct evidence of retaliation, the court assesses retaliation claims under the *McDonnell Douglas* burden-shifting framework.[22] Under *McDonnell Douglas*, plaintiff initially bears the burden of production to establish a prima facie case of discrimination.[23] The elements of a prima facie claim of retaliation under Title VII are: (1) the employee engaged in protected opposition to discrimination; (2) the employee suffered an adverse employment action during or after his protected opposition that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.[24] The Supreme Court has recently clarified that a Title VII plaintiff asserting a claim of retaliation must show that his protected activity was the but-for cause of the alleged adverse employment action.[25] If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nonretaliatory reason for its actions.[26] If defendant articulates a legitimate nonretaliatory reason, the burden shifts back to plaintiff to present evidence from which a jury might conclude that defendant's proffered reason

---

[21] 42 U.S.C. § 2000e-3(a).

[22] 411 U.S. 792, 802–04 (1973). On June 24, 2013, the Supreme Court considered the causation standard that applies to Title VII retaliation claims, holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). But this decision does not alter the continued application of *McDonnell Douglas* to Title VII retaliation claims at the summary judgment stage. *See Jones v. Okla. City Pub. Schools*, 617 F.3d 1273, 1278–79 (10th Cir. 2010) (holding that *Nassar*'s predecessor *Gross* did not overrule application of the *McDonnell Douglas* burdenshifting framework to ADEA cases); *Moore-Stovall v. Shinseki*, 969 F. Supp. 2d 1309, 1321 n.15 (D. Kan. 2013) (explaining that *Nassar* does not alter the burdenshifting framework at the summary judgment stage of a retaliation claim, relying on *Jones*).

[23] *McDonnell Douglas*, 411 U.S. at 802.

[24] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201–02 (10th Cir. 2008); *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006).

[25] *Nassar*, 133 S. Ct. at 2533.

[26] *Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

is pretextual, that is, "unworthy of belief."[27]

   A.   **Causation**

There is no dispute that Plaintiff can establish the first two elements of his prima facie case: he engaged in protected opposition to discrimination when he filed Case No. 10-4137, and the failure to recall him to work in 2012 is an adverse employment action. Defendant argues that Plaintiff has no evidence that his prior lawsuit caused him not to be recalled in early 2012. A causal connection between protected activity and adverse action may be shown by temporal proximity if the protected activity and the adverse action occurred so closely situated in time as to give rise to the inference of causation.[28] But, "unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[29] Thus, a time period of three months between protected activity and adverse action is not enough to establish causation, but a period of one and a half months has been held to be enough.[30] Here, Plaintiff's allegations are enough to give rise to the inference of but-for causation based on temporal proximity. Plaintiff's Title VII suit settled on December 8, 2011, and two of the employees that Plaintiff claims were recalled out of seniority occurred on or about January 22, 2012, a date almost exactly one and a half months after the settlement. The two events are close enough in time as to allow a reasonable juror to infer a causal connection between the two, and therefore Plaintiff has met his slight burden of

---

[27]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[28]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

[29]*Id.* (emphasis in original).

[30]*Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994).

establishing a prima facie case of retaliation.

As described in the next section, the Court also finds additional evidence in the record beyond temporal proximity that would establish causation.[31]

**B. Pretext**

Defendant has articulated a legitimate, non-retaliatory motive for its decision not to recall Plaintiff in 2012 by explaining that its business was declining and that it followed the CBA and company policy to determine recalls and transfers. Therefore, the burden shifts back to Plaintiff to show that Defendant's explanation is merely a pretext for retaliation. Plaintiff can demonstrate pretext by showing "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[32] Mere conjecture is not enough; a plaintiff must "cast doubt" on the employer's explanations by specifically pointing out these "implausibilities, incoherencies, or contradictions."[33]

Plaintiff argues that five categories of circumstantial evidence demonstrate pretext: (1) Defendant's failure to follow section 6.2 of the CBA for recalls; (2) Defendant's deviation from normal company procedure in its recalls and in refusing to allow Plaintiff to complete a job

---

[31]*See EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007) ("Regardless of whether we analyze the plaintiff's evidence 'in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result.'" (quoting *Sorbo v. UPS*, 432 F.3d 1169, 1173 (10th Cir. 2005)).

[32]*Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[33]*Id.* at 1323–25.

10

interest questionnaire; (3) similarly situated employees were treated more favorably; (4) false explanations were given for Defendant's decision not to recall Plaintiff; and (5) close temporal proximity between his protected activity and the adverse employment action. The Court finds that Plaintiff has raised a genuine issue of material fact as to pretext sufficient to avoid summary judgment.

Plaintiff may be able to demonstrate pretext from "evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances."[34] Plaintiff argues that Defendant failed to follow section 6.2 of the CBA in recalling employees to the press department without regard to seniority. He argues that section 6.2 applied to the 2012 recalls because all four comparable employees were first recalled to the press department before their transfer to other departments such as bindery or plate. Defendant responds that this provision does not apply to convenience transfers where an employee is recalled to their home department, serves no time there, and is immediately transferred to another department; its policy was to recall without regard for seniority under such circumstances.

In support of its position, Defendant points to the testimony and declaration of Struble, who was a Senior Human Resources Manager for Jostens, and the declaration of another manager. Moreover, the company's response to the union grievance supports that Defendant did not apply section 6.2 of the CBA to employee convenience transfers. While Struble testified that these employees were technically recalled to their home department first, he explained that this was purely administrative and that they did no actual work for their home departments in those

---

[34]*Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

cases.

The only evidence Plaintiff submits to controvert Defendant's evidence about employee convenience transfers is his own declaration and deposition testimony. Defendant objects to Plaintiff's lack of personal knowledge about whether less senior press department employees were recalled out of seniority, and argues that his statements about company policy are merely conclusory and should be disregarded. Fed. R. Civ. P. 56(c)(4) requires that affidavits be made on personal knowledge and "set out facts that would be admissible in evidence." Fed. R. Evid. 602 requires that a testifying witness "ha[ve] personal knowledge of the matter" testified to.[35] "Under the personal knowledge standard, an affidavit is inadmissible if 'the witness could not have actually perceived or observed that which he testifies to.'"[36] Conclusory allegations without specific supporting facts do not have probative value.[37] Also, at the summary judgment stage, "statements of mere belief" in an affidavit must be disregarded.[38]

Plaintiff does not offer any foundation for his personal knowledge that all employees senior to him were recalled. Struble's affidavit establishes the opposite: that there was an employee of Defendant's with higher seniority than Plaintiff, Matt Tichenor, who was also not recalled to work during the 2012 season.[39] And Struble's affidavit establishes his personal knowledge of these facts because it states that he has reviewed the personnel documents on these

---

[35]Fed. R. Evid. 602.

[36]*Argo v. Blue Cross Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006) (*United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir.1997)).

[37]*Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005).

[38]*Argo*, 452 F.3d at 1200.

[39]Doc. 33-1 at 2.

12

recalls, and because his job required him to have personal knowledge of such facts, as compared to Plaintiff.

Plaintiff also states that Defendant acted contrary to company policy in determining recalls without providing any supporting facts as to how its policy of recalling without regard to seniority for employee convenience transfers was contrary to the written policy. The Court agrees that these statements are inadmissible, both because Plaintiff lacks personal knowledge about the company's policy and because these statements are merely statements of belief. Moreover, Struble, who did establish personal knowledge on this issue in his declaration, attested that there was an employee more senior than Plaintiff in the press department who was not recalled and that the company regularly recalled employees for convenience transfers without regard for seniority. Therefore, accepting as true Plaintiff's assertion that Defendant's failure to use seniority for recalling employees for an employee convenience transfer was in violation of the CBA, it is not necessarily probative of retaliation. The uncontroverted evidence shows that Defendant consistently interpreted the CBA as allowing recalls for an "employee convenience transfer" without regard to seniority.

However, Plaintiff has come forward with evidence that Defendant violated its own policy and the CBA when it came to Radford and Allen's permanent transfers to the bindery department. Struble testified that these permanent transfers were subject to section 6.2 of the CBA and therefore, they were determined by seniority. He testified that these positions would have to be advertised. It is uncontroverted that both of these individuals were less senior than Plaintiff and that Plaintiff had experience in the bindery department. Defendant fails to address this evidence, merely cross-referencing its arguments as to employee convenience transfers. But

13

Struble's testimony differed as to the two: he testified that the employee convenience transfers were temporary and therefore seniority did not determine who was recalled for such transfers. In contrast, he testified that permanent transfers had to be advertised, and were based on seniority. Assuming as true Plaintiff's evidence that he had experience in the bindery department, and viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could determine that the Radford and Allen recalls violated the CBA and company policy, to Plaintiff's detriment.

To be sure, the question before this Court is not necessarily whether Defendant violated the CBA when it disregarded seniority in the cases of Miller, Radford, Wilson, and Allen, but whether it reasonably believed that it was correctly interpreting the CBA when it declined to apply it in the context of these transfers.[40] The Court is not to "ask whether the employer's decision was 'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs.'"[41] Plaintiff has not come forward with evidence that Defendant's interpretation as to employee convenience transfers was more than simply wrong—the evidence demonstrates that Defendant had a good faith basis in its interpretation. However, Plaintiff has come forward with evidence that Defendant would not have had a good faith belief it was correctly applying the CBA to the permanent transfer of less senior members of the press department in 2012, and a reasonable jury

---

[40] *See, e.g.*, *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007).

[41] *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)).

14

could determine that this evidence demonstrates a retaliatory animus as to Plaintiff.

Relatedly, Plaintiff contends that he was treated differently than other similarly-situated, non-protected employees.[42] An employee is similarly-situated if the employee deals with the same supervisor and is subject to the same rules of performance and discipline as Plaintiff.[43] To determine whether employees are similarly situated, the Court "should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees."[44] Ultimately, the burden is on Plaintiff to show that the employees he proffers as similarly-situated are indeed just that.[45]

Here, Plaintiff points to four employees as similarly situated: Brandon Allen, Michael Radford, Jon Wilson, and Craig Miller. Plaintiff alleges that each of these employees had less seniority than Plaintiff, and yet all four were recalled to work when Plaintiff was not, contrary to the provisions of the CBA. As explained above, the Court finds that while the uncontroverted evidence shows that the company consistently interpreted the CBA seniority provision as not applying to employee convenience transfers, Plaintiff has come forward with uncontroverted evidence that Radford and Allen were permanently recalled in violation of the CBA. A reasonable jury could infer based on this evidence that Defendant's stated reason for the adverse employment action is a pretext for retaliation.

---

[42] *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000).

[43] *Id.*

[44] *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

[45] *Hysten v. Burlington Northern & Santa Fe Ry. Co.*, 296 F.3d 1177, 1182 (10th Cir. 2002).

Accordingly, the Court finds that Plaintiff has pointed to sufficient evidence in the summary judgment record to demonstrate a genuine issue of material fact on whether Defendant's reasons not to recall him were in fact pretextual and therefore summary judgment must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 24) is DENIED.

**IT IS SO ORDERED.**

Dated: May 15, 2014

                                       S/ Julie A. Robinson
                                       JULIE A. ROBINSON
                                       UNITED STATES DISTRICT JUDGE